UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

CORRINE DICKEY,

        Plaintiff,

        v.                                                              Case No. 04-C-0414

JO ANNE B. BARNHART,
Commissioner of the Social
Security Administration,

        Defendant.

_____

## O R D E R

This is an action for judicial review of the final decision of the Commissioner of Social Security. Upon re-evaluation of the plaintiff's status, the Commissioner of Social Security found that the plaintiff was no longer disabled and that she was no longer entitled to disability insurance benefits or supplemental security income benefits as of February 2001. The plaintiff appeals the Commissioner's decision, arguing that the Administrative Law Judge ("ALJ") who held a hearing on the plaintiff's claim (1) failed to obtain a valid waiver of her right to counsel; and (2) did not properly determine that the plaintiff was not disabled. Because the ALJ fully and fairly developed the record, the court finds that the plaintiff suffered no prejudice from any failure to obtain a valid waiver of

counsel. The court also finds that the ALJ's decision is supported by substantial evidence.

## BACKGROUND

The plaintiff initially applied for and received disability insurance benefits in June 1983 after she had been diagnosed with lupus. In 1988, the Commissioner determined that she was no longer disabled due to medical improvements in her condition. She successfully reapplied for disability insurance benefits and supplemental security income in 1991. In 1995, the Social Security Administration undertook re-evaluation of the plaintiff's status and, after a hearing before an ALJ, the Commissioner determined that the plaintiff remained disabled. In 2000, the Social Security Administration again undertook a reevaluation of the plaintiff's status. In February 2001, the plaintiff was notified that the Social Security Administration determined that she was no longer disabled and that benefits would cease. On July 8, 2003, a hearing was held before ALJ Guy E. Fletcher. Present and testifying at the hearing were the plaintiff, the plaintiff's mother, a psychologist testifying as a medical expert, and a vocational expert. On November 25, 2003, the ALJ issued a written decision finding that the plaintiff's disability ceased in February 2001. The ALJ found that at least since February 2001, the plaintiff had the residual functional capacity to perform sedentary work with limited to frequent use of her hands. The ALJ's

decision became the final decision of the Commissioner when the Appeals Council denied her request for review. The plaintiff filed this action in federal court appealing the Commissioner's decision. The issues are fully briefed.

## ANALYSIS

The court reviews an ALJ's decision that an applicant is not disabled for substantial evidence. 42 U.S.C. § 405(g); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court reviews the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Jens*, 347 F.3d at 212. However, where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). While written evaluation of every piece of evidence on claim for social security disability benefits is not required, the ALJ must sufficiently articulate his or her assessment of evidence to assure reviewing court that ALJ considered important evidence and to enable court to trace path of ALJ's reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

I.   Waiver of counsel

The plaintiff argues that the ALJ did not obtain from plaintiff a valid waiver of her right to an attorney and that the ALJ did not fully and fairly develop the record. The Commissioner does not argue that the ALJ obtained from the plaintiff a valid waiver of her right to an attorney, but the Commissioner responds that the ALJ developed the record fully and fairly. The parties agree that the court should not remand the action unless the plaintiff can show that she has been prejudiced by the absence of a fully and fairly developed record. *See Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The plaintiff argues that the record was not fully and fairly developed because the ALJ's questioning was "rather superficial" and "substantial medical records" were "missing from the file."

The court finds that the ALJ's questioning of the plaintiff was indeed thorough. The ALJ took detailed testimony from the plaintiff at the hearing, questioning the plaintiff about her medical history, medications, symptoms, types of treatment that she received, work history, daily activities, and functional limitations. Specifically, the ALJ elicited testimony from the plaintiff that she could stand or sit for an hour at a time. (Transcript 36.) The ALJ elicited testimony that the plaintiff has some trouble lifting because of arthritis in her hands and shoulders but that the arthritis does not prevent her from dusting,

vacuuming, cleaning dishes, or folding laundry. (Tr. 36-38.) The plaintiff testified that the primary reason she believes that she could not perform a sedentary job in an office-type environment is because of her perceived lack of job skills and her computer illiteracy, (Tr. 38-39), and the primary reason preventing her from learning a job skill is money. (Tr. 40.) When the ALJ offered the plaintiff an opportunity to state any additional matters, the plaintiff emphasized her lack of job experience and her difficulties finding adequate insurance coverage:

> I don't think I'd have a problem finding a job if I lose my disability. The problem would be that who's going to hire me with – I have no experience with anything, and I would have a hard time working 30 hours a week, much less an insurance company ever picking me up, because this is a pre-existing condition. It goes back 20 years. When I was married, my husband's insurance company dropped, went to two different insurance companies because I cost them a lot of money.

(Tr. 41.) The ALJ clarified the plaintiff's brief remark about having a hard time working 30 hours a week:

> Q. And when you say you'd have trouble working even 30 hours a week, again, is that just a fatigue factor or –
>
> A. That's a fatigue factor.
>
> Q. Okay. All right.

(Tr. 41.) The ALJ's questioning was not superficial.

The plaintiff suggests that the ALJ could have probed further regarding the plaintiff's fatigue or her pain. Aside from a stray remark about having trouble

working 30 hours a week, the plaintiff did not present fatigue or pain as a limitation to her ability to work. Rather, the plaintiff emphasized her lack of job skills, experience, and money to gain job skills, not her inability to perform work. *See* 20 C.F.R. § 404.1566(c) (considering only claimant's ability to perform work, not claimant's ability to obtain work as impacted by hiring practices of employers); *see also* 42 U.S.C. 423(d)(2)(A) ("An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.*") (emphasis added). The ALJ's depth of questioning regarding the plaintiff's pain and fatigue does not indicate that the record was not fully or fairly developed; it reflects the nature of the plaintiff's testimony. Moreover, the plaintiff does not suggest how she would have answered any further questions concerning her fatigue or pain, much less describe how her answers would have influenced the ALJ's determination. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246. The ALJ's questioning of the plaintiff's fatigue and pain does not warrant a remand.

The plaintiff also argues that the ALJ did not ask the plaintiff how she would respond to working full-time on a sustained basis. First, the ALJ did ask the plaintiff what primary limitations would prevent her from working in a sedentary job, and the limitations that the plaintiff described did not relate to her physical condition. (*See* Tr. 38-40.) The plaintiff also indicated that she could sit or stand for an hour at a time and that she would find working 30 hours a week difficult. Second, the plaintiff does not suggest how she would have further answered this question or describe how her answer would have influenced the ALJ's determination. The court, therefore, cannot say that the plaintiff was prejudiced by the alleged absence of a fully developed record. *See Binion*, 13 F.3d at 246.

Finally, the plaintiff argues that medical records are missing from the administrative record. The plaintiff speculates that an x-ray from 1999, treatment notes from a Dr. Rao, and unidentified medical records from 1998, 1999, 2002, and 2003 would have affected the ALJ's determination, but this type of unsupported speculation was rejected in *Binion*. 13 F.3d at 246 ("Plaintiff has not pointed to any specific facts that were not brought out during the hearing nor has she provided any new medical evidence."). Also, "a significant omission is usually required before this court will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly." *Nelson*, 131 F.3d at 1235 (quoting *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). The plaintiff has not

described the significance of the allegedly missing medical records. Moreover, the court agrees with the Commissioner that the plaintiff mischaracterizes the record with respect to the treatment notes of Dr. Mary Lou Taylor, a psychologist who treated the plaintiff for a year and half before the July 8, 2003 hearing. (Tr. 32.) At the hearing, clinical psychologist Dr. Phillip R. Ruppert testified about the plaintiff's lack of any significant mental impairments. (Tr. 43-47.) At the end of the hearing, the ALJ suggested that the plaintiff may wish to add Dr. Taylor's notes to the record if they would reflect something different than Dr. Ruppert's testimony. (Tr. 51.) The plaintiff responded, "No. I totally agree with what [Dr. Ruppert] said, because that's how Dr. Taylor –." (Tr. 51.) The ALJ did not require Dr. Taylor's treatment notes to be made part of the record. Assuming that the plaintiff was wrong and that Dr. Taylor's notes differed from Dr. Ruppert's opinion, the plaintiff once again failed to demonstrate how the notes would have affected the ALJ's decision. The plaintiff does not suggest now and did not suggest at the hearing how the notes would have added anything new to the record. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (holding that the primary responsibility for producing medical evidence remains with the claimant and that the ALJ's judgment about how much evidence to

gather should generally be respected). The plaintiff has failed to show that she was prejudiced by the lack of a fully developed record.[1]

II. Substantial evidence

The ALJ found that the plaintiff retained the RFC to perform sedentary work that did not require the constant use of her hands. (Tr. 16-18.) Vocational expert ("VE") Jacquelyn Wenkman testified that there were a significant number of jobs in Wisconsin that the plaintiff was capable of performing. In arriving at her conclusion, Wenkman assumed that the plaintiff was limited to sedentary work that involved no constant use of her hands, no lifting over ten pounds, no standing for more than two hours in an 8-hour workday, and with the need to change positions every hour. In a second hypothetical, Wenkman assumed that the plaintiff would be limited to no more than occasional use of her hands; Wenkman stated that the plaintiff would be capable of performing a significant number of jobs with the additional restriction.

The plaintiff argues that the ALJ did not adequately assess the plaintiff's RFC because the ALJ did not fully and fairly develop the record to determine what limitations Dr. Csuka and Dr. Taylor would have placed on the plaintiff's ability to work. "An ALJ need recontact medical sources only when the evidence received

---

[1] Additionally, the plaintiff does not seek a remand pursuant to sentence six of 42 U.S.C. § 405(g) so that the ALJ may consider "new" and "material" evidence. *See Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005) (defining evidence that is "new" and "material").

is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(e)). In this case, two doctors had performed an evaluation of the plaintiff's RFC, finding that the plaintiff had the capacity to perform light work. (Tr. 16, 852-80.) The plaintiff does not contend that the two doctors' findings were incorrect or misleading. Therefore, contacting the plaintiff's physicians for additional evaluations was unnecessary.

Again, the plaintiff contends that the record was not fully or fairly developed. The plaintiff ambiguously alleges that "three years of records" are missing without any suggestion of what those records may indicate. (*See* plaintiff's reply brief, at 3.) The plaintiff, represented by an attorney before this court, must do more than refer to records that may or may not exist and that may or may not contain relevant information. *See Flener ex rel. Flener,* 361 F.3d at 448. The plaintiff has not demonstrated that the administrative record, or the ALJ's RFC determination, is deficient.[2]

---

[2] The plaintiff argues that the Commissioner has the burden of proving that the ALJ fully and fairly developed the record. *See Binion,* 13 F.3d at 245. In this case, the Commissioner met her burden. The ALJ's questioning was thorough, the hearing comprehensive, and the ALJ allowed the plaintiff to object to any evidence in the record or to add any non-redundant evidence to the record. *Binion* states that the plaintiff may rebut this showing by demonstrating prejudice or an evidentiary gap. 13 F.3d at 245. The plaintiff argues that there are no treatment notes in the record from 2002 or the first half of 2003, but this does not demonstrate an evidentiary gap because no significant treatment notes may have been created during that period of time. Like the plaintiff in *Binion,* the plaintiff in this action has not "pointed to any specific facts that were not brought out during the hearing nor has she provided any new medical evidence." *Id.* at 246.

The ALJ's RFC incorporated many, if not all, of the limitations that the plaintiff noted at the hearing. The plaintiff indicated that she could sit or stand in one place for an hour before she would have to move. (Tr. 36.) The ALJ incorporated that limitation into the question he posed to the VE. (Tr. 48.) The ALJ credited the plaintiff's reports of fatigue and limited her RFC assessment to sedentary work. (Tr. 16.) The plaintiff stated that she had a hard time picking up a gallon of milk, (Tr. 36), and the ALJ excluded any work that required lifting more than ten pounds. (Tr. 48.) The plaintiff indicated that she had weakness in her hands, (Tr. 37), and the ALJ excluded any work that required constant use of hands. (Tr. 16, 18.) The ALJ also posed a second hypothetical to the VE that assumed no more than occasional use of the hands, and the VE testified that a significant number of jobs with those restrictions existed which the plaintiff could perform. (Tr. 16.)

The plaintiff argues that the ALJ did not properly assess the plaintiff's credibility, but the plaintiff's credibility was not largely at issue. The ALJ accepted almost all of the plaintiff's testimony at face value. The only exception may be the ALJ's statement, "However, as to claimant's assertions with regard to limited use of the hands, the undersigned finds no evidence to suggest any significant compromise here." (Tr. 16.) When evaluating the credibility of subjective complaints, an ALJ determines whether the testimony is substantiated by

objective medical evidence. *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The other factors that an ALJ considers include: (1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.* The ALJ appropriately compared the plaintiff's testimony with the medical evidence in the record and Dr. Melzer's report in particular. (Tr. 16.) The ALJ appropriately considered other factors relevant in making a credibility determination, including the plaintiff's work activities. *See* 20 C.F.R. §§ 404.1529(c)(3)(I) (daily activities are a relevant factor in evaluating credibility). Earlier in his decision, the ALJ noted the plaintiff's testimony that she is able to engage in household activities such as light dusting, vacuuming, doing dishes, and a little shopping. (Tr. 16.) Finally, the ALJ stated that the "infrequency of visits to physicians in the last few years also suggest that the condition is not all that severe or incapacitating, otherwise it would be reasonable to assume that frequency of visits would be considerably more than has been the case." (Tr. 17.) In other words, an incapacitating degree of pain is not supported by the medical records. *See Sienkiewicz v. Barnhart*, – F.3d –, 2005 WL 1274279, *5 (upholding an ALJ's credibility determination that was based in part upon an observation that the plaintiff sought medical treatment seven times in eight years

and never sought treatment for allegedly disabling headaches). The ALJ articulated the basis for rejecting the plaintiff's assertions regarding the limited use of her hands and addressed factors relevant to a credibility determination. The ALJ's determination is not "patently wrong," and the court, therefore, should not overturn it. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

Despite the ALJ's statement that he found no significant compromise with the plaintiff's use of her hands, the ALJ incorporated limitations on the plaintiff's use of her hands in his RFC assessment and in the hypotheticals posed the VE in a manner consistent with the plaintiff's testimony. The plaintiff did not testify that she could not use her hands occasionally or even frequently. She testified that they were weak but that she could fold laundry, vacuum, clean dishes, and perform part-time jobs that involved cleaning or answering phones. (Tr. 34-38.) The ALJ's assessment of the plaintiff's credibility does not require remand.

Because the ALJ's findings are supported by substantial evidence, the court denies the plaintiff's appeal of the Commissioner's decision to deny the plaintiff DIB and SSI benefits.

Accordingly,

IT IS ORDERED that the plaintiff's appeal of the Commissioner's decision be and the same is hereby DENIED;

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this  27th  day of July, 2005.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge